# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DONALD JAMES ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:22-cv-00732 |
| ) | |
| SHERIFF JOHN FUSON, et al., ) | JUDGE CAMPBELL |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Donald Robinson, a former inmate of the Montgomery County Jail in Clarksville, Tennessee, who is currently incarcerated in Stewart County (*see* Doc. No. 13), filed a pro se complaint for alleged violation of his civil rights (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP) (Doc. No. 2), challenging the conditions of his confinement in Montgomery County. Since filing the complaint, Plaintiff has amended once as of right, to correct the constitutional source of his cause of action. (Doc. No. 6.) He also filed two subsequent motions for leave to amend. (Doc. Nos. 6 and 12.) Plaintiff's most recent motion to amend (Doc. No. 12) is **GRANTED**, and the Clerk is **DIRECTED** to docket the proposed amendment (Doc. No. 12-1) as his Amended Complaint.

The Amended Complaint (Doc. No. 12-1) is thus the operative pleading in this case. The case is before this Court for ruling on Plaintiff's IFP application and initial review of the Amended Complaint pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, 42 U.S.C. § 1997e.

## I. APPLICATION TO PROCEED IFP

A prisoner bringing a civil action may be permitted to file suit without prepaying the filing

fee required by 28 U.S.C. § 1914(a). 28 U.S.C. § 1915(a). Because it appears from Plaintiff's submission that he lacks sufficient financial resources to pay the full filing fee in advance, his application to proceed IFP in this matter (Doc. No. 2) is **GRANTED** and a $350 filing fee[1] is **ASSESSED**.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

---

[1] While prisoners who are not granted pauper status must pay a total fee of $402—a civil filing fee of $350 plus a civil administrative fee of $52—prisoners who are granted pauper status are only liable for the $350 civil filing fee. *See* 28 U.S.C. § 1914(a)–(b) and attached District Court Miscellaneous Fee Schedule, provision 14 (eff. Dec. 1, 2020).

## II. INITIAL REVIEW

**A. Legal Standard**

The Court is required to screen the Amended Complaint in order to determine whether its claims are cognizable, or whether it (or any portion of it) must be dismissed because it is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); *see id.* § 1915(e)(2)(B), 42 U.S.C. § 1997e(c).

The review for whether the Amended Complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). This review only assumes that the *facts* alleged in the Amended Complaint are true; allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement'" are not accepted as true. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the

3

requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

Plaintiff sues under 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a cognizable Section 1983 claim, Plaintiff must allege (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Allegations and Claims**

Plaintiff alleges that in 2017, during a previous stint in the Montgomery County Jail ("the Jail"), he was approved by the jail chaplain to receive a Jainism diet and was thereafter provided with meals that accorded with those dietary requirements, until his release. (Doc. No. 12-1 at 14.) When he returned to the Jail in 2021, there was no active chaplain, so Plaintiff requested a religious diet through a guard, who referred him to the medical department. (*Id.*) The medical department disclaimed any responsibility for prescribing religious diets, so Plaintiff returned to officers of the Jail with his request, who again referred him to medical. (*Id.* at 14–15.) Plaintiff filed grievances when the ping-pong continued "between the jail and medical," until he was finally told on September 28, 2021, that the jail "no longer ha[d] a Jainism diet." (*Id.* at 15–16.) At that point, believing that further requests for a religious diet would be fruitless and that he had "no choice but to consume the meals provided that violated [his] religious guidelines and . . . [constitutional]

4

rights," Plaintiff stopped filing grievances. (*Id.* at 16–17.)

After later learning that he could file a civil rights action under Section 1983 (*id.* at 17), Plaintiff began "gathering information" and ultimately filed a grievance requesting his religious diet on October 30, 2022. (*Id.* at 17–18.) In response to this grievance, Lt. Welch asked Plaintiff what his religious requirements were. (*Id.* at 18.) On November 15, 2022, Plaintiff filed a grievance "with a list of foods acceptable to eat according to [his] religious guidelines." (*Id.*) When he did not receive meals in compliance with this list, Plaintiff filed another grievance on December 9, 2022, and the next day, the Jail unsuccessfully "attempt[ed] to provide [him] with a diet" that met his asserted "religious guidelines." (*Id.* at 19.) Plaintiff filed a grievance that same day informing Ms. Glover of Trinity Food Services "that these certain foods were unacceptable and ask[ing] that she refer to the list of foods [he] provided." (*Id.*) The next day, December 11, 2022, Plaintiff filed another grievance advising that his "trays once again contain[ed] foods that violate [his] religious guidelines." (*Id.*) He filed two additional grievances on December 13 and 15, 2022, "about the diet being provided not being correct," but no correction was made. (*Id.* at 19–20.) Plaintiff "attempted to send each tray that was in violation of [his] religious guidelines back to be corrected." (*Id.* at 19.)

Plaintiff asserts violations of his First and Fourteenth Amendment rights and seeks declaratory relief, an injunction ordering that he be provided with a diet in compliance with his religious guidelines, nominal damages of one dollar against each Defendant, and punitive damages. (*Id.* at 4, 6, 21.) At some point prior to February 20, 2023, the date of his most recent filing (Doc. No. 13), Plaintiff was transferred to the Stewart County Jail.

**C. Analysis**

Under the First Amendment, which is applicable to the States through the Fourteenth Amendment, *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993), prisoners retain the right to freely exercise their religion, subject to limitations arising "both from the fact of incarceration and from valid penological objectives." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). Consistent with this right to free exercise, prisoners are entitled to "meals that meet their nutritional needs" and "do not violate their sincerely-held religious beliefs." *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015) (citing *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010)). "But there is no constitutional right for each prisoner to be served the specific foods he desires . . . in prison." *Id.* (citing *Spies v. Voiovich*, 173 F.3d 398, 406–07 (6th Cir. 1999) (holding that providing a Buddhist prisoner with a vegetarian diet but not a vegan diet was constitutionally permissible, and "the fact that Plaintiffs dislike the alternate diet available does not render it unreasonable or legally deficient.")).

In the case at bar, the Court must note at the outset that any claim based on denial of a religious diet prior to September 15, 2021—which is one year prior to the date Plaintiff signed his original complaint (*see* Doc. No. 1 at 10)—is barred by the applicable statute of limitations. The statute of limitations for Section 1983 claims in Tennessee is the one-year period established in Tenn. Code Ann. § 28-3-104(a)(1)(B). *Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1161 (6th Cir. 2021); *see also Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) ("The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises."). Accordingly, any claim arising from the meal service in the Jail prior to September 15, 2021 is

subject to dismissal as untimely.[2] It is of no import that Plaintiff did not learn of his ability to file a Section 1983 action until 2022; the statute begins to run when the claim accrues, which in the Sixth Circuit is the date that Plaintiff discovers "both his injury and the responsible party," not the date he discovers that a vehicle for suing the responsible party exists. *Cox v. City of Jackson, Tennessee*, 811 F. App'x 284, 288 (6th Cir. 2020) (quoting *Hall v. Spencer Cnty., Ky.*, 583 F.3d 930, 933 (6th Cir. 2009)); *see Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.").

As to Plaintiff's claim based on deprivation of religious meals during the limitations period, he must allege that: "(1) the belief or practice he seeks to protect is religious within his own 'scheme of things,' (2) that his belief is sincerely held, and (3) the Defendant's behavior infringed upon this practice or belief." *Fields v. Trinity Food Serv.*, No. 17-1190-JDT-CGC, 2019 WL 5268565, at *6 (W.D. Tenn. Oct. 17, 2019) (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987)). "[T]he touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of 'whether the beliefs professed . . . are sincerely held[.]'" *Colvin*, 605 F.3d at 298 (quoting *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999)). Although it is not specified in the Amended Complaint, the Court presumes that all deprivations of a "religious diet" claimed to have occurred during the limitations period involve deprivation of foods approved under Jainism. Plaintiff does not explicitly allege that he has, or at any time had, a sincerely held religious belief in Jainism or its dietary laws. In fact, his Amended Complaint does not say

---

[2] Although the statute of limitations is an affirmative defense, district courts may apply it *sua sponte* on initial review where, as here, the defense is obvious. *Comer v. Transit Auth. of N. Kentucky*, No. 2:20-CV-00084-GFVT, 2020 WL 3719818, at *2 (E.D. Ky. July 6, 2020) (citing, *e.g.*, *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense[.]"); *Franklin v. Fisher*, No. 16-6464, 2017 WL 4404624, at *2 (6th Cir. May 15, 2017) (finding that dismissal at PLRA screening for failure to state a claim was proper because complaint's untimeliness was "obvious from the face of [the] complaint")).

7

anything at all about his practice of the Jainist faith, the tenets of Jainism, or its particular dietary requirements or restrictions. It merely alleges that Plaintiff "had this diet established before" at the Jail, was told on September 28, 2021 that it was no longer offered, and again requested a "religious diet" on October 30, 2022, at which time jail staff asked "what [his] religious guidelines consist of" and he responded by filing a grievance that contained a list of "acceptable" foods. (Doc. No. 12-1 at 16, 18.) Then, when Plaintiff received meal trays that failed to comply with the list he provided, he informed the provider that "certain foods were unacceptable" and "attempted to send each tray that was in violation of [his] religious guidelines back to be corrected," but the provider refused to correct the returned meal trays. (*Id.* at 19–20.)

Again, prisoners are entitled to "meals that do not violate their sincerely-held religious beliefs." *Robinson*, 615 F. App'x at 314. But "[t]he mere assertion of a religious belief does not automatically trigger First Amendment protections[.]" *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (*en banc*). Concomitantly, "if a prisoner's request for a particular diet is not the result of sincerely held religious beliefs" but of some other desire to eat particular food, then "the First Amendment imposes no obligation on the prison to honor that request[.]" *Id.* at 52. *See also Ackerman v. Washington*, 436 F. Supp. 3d 1002, 1012 (E.D. Mich. 2020), *aff'd*, 16 F.4th 170 (6th Cir. 2021) ("[A] prisoner's request for an accommodation must be based on a religious belief and not some other motivation."). Here, in the absence of any assertion that his desire for a religious diet stemmed from sincerely-held religious beliefs,[3] Plaintiff's allegations that the Jail

---

[3] *Compare Yaacov v. Mohr*, No. 16-4361, 2018 WL 6333604 (6th Cir. June 5, 2018), where the Sixth Circuit Court of Appeals reversed the district court's dismissal of a First Amendment complaint at initial screening on grounds that the inmate's "desire for a vegan/vegetarian meal plan was merely a personal food preference to which he was not constitutionally entitled," because "Yaacov asserted in his complaint that his meatless kosher diet was rooted in his religious beliefs, . . . acknowledg[ing] that his religion neither prohibits nor requires adherence to a vegetarian/vegan diet, but stat[ing] that he 'chose[] an alternative meatless kosher diet [in] accordance [with] his faith and sincere religious beliefs.'" *Id.* at *2. The court concluded that, "[b]y characterizing Yaacov's desire for a meatless kosher option as simply a personal

8

Case 3:22-cv-00732   Document 14   Filed 04/05/23   Page 8 of 10 PageID #: 124

"attempt[ed] to provide [him] with a diet" that conformed to his "list of foods acceptable to eat according to [his] religious guidelines," but failed to hew closely enough to that list to satisfy those guidelines (Doc. No. 1 at 18–20), are not sufficient to claim a right to relief under the First Amendment. *See Davismoore v. Davis*, No. 1:18CV1468, 2019 WL 1558679, at *3 (N.D. Ohio Apr. 10, 2019) (declining to infer that "maintaining a kosher diet is Plaintiff's sincerely held religious belief," where inmate, though previously approved for kosher meals, "does not allege that he is Jewish").

Even if Plaintiff had sufficiently alleged a sincerely-held religious belief in Jainism, his Amended Complaint does not provide any facts about the corresponding dietary requirements/restrictions or the ways in which the Jail failed to accommodate them, and so fails to support a claim to relief based on Defendants' infringement upon his Jainist beliefs—the third element of his constitutional claim. *See Fields*, 2019 WL 5268565, at *6. Neither does Plaintiff allege that he was denied entire meals because of a lack of acceptable food on his tray, nor that he suffered any lack of nourishment due to the service of food forbidden by his sincerely-held religious belief. Finally, the Court notes that Plaintiff's claims to declaratory and injunctive relief against officials at the Montgomery County Jail are rendered moot in light of his transfer to the Stewart County Jail, *Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)), and would be so even if they were liberally construed as arising under the more expansive protections of the Religious Land Use and Institutionalized Persons Act (RLUIPA). *Cardinal v. Metrish*, 564 F.3d 794, 798–99 (6th Cir. 2009) (citing *Kensu*, *supra*).

---

preference and rejecting his free-exercise claim on that basis, the district court improperly made a judgment about the validity of Yaacov's beliefs." *Id.*

For these reasons, the Amended Complaint fails to state a viable claim as currently constituted. However, the Court in an abundance of caution and in the interest of justice will allow Plaintiff a final opportunity to amend his pleading in order to cure the deficiencies noted above if he so desires. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) (holding "that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA").

### III. CONCLUSION

In sum, Plaintiff's IFP application (Doc. No. 2) is **GRANTED**, and the $350 filing fee is **ASSESSED** against his inmate trust account as described herein. Plaintiff's motion to amend (Doc. No. 12) is also **GRANTED**, and the Clerk **SHALL** docket his most recent proposed amendment (Doc. No. 12-1) as his Amended Complaint.

While the Amended Complaint is subject to dismissal for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A, and 42 U.S.C. § 1997e(e), the Court will allow Plaintiff the opportunity to file another Amended Complaint within **30 DAYS** of the entry of this Order. The Clerk is **DIRECTED** to provide Plaintiff with a form for filing a civil rights complaint (Pro Se Form 14). Plaintiff is cautioned that failure to file an Amended Complaint within 30 days or to seek an extension of this deadline before it expires will result in dismissal of this action.

With the case in this posture, Plaintiff's other pending motions (Doc. Nos. 4, 5, 6, 7, 8, 9, 10, 11, and 13) are **DENIED** as moot.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE